## Commonwealth v. Rehmeyer

636

*John T. Miller*, for Commonwealth.

*Victor Dell'Alba*, for defendants.

ATKINS, P. J., December 10, 1962.—In these four cases, defendants were each charged with participating in an obscene and indecent dramatic or theatrical exhibition in violation of section 528 of The Penal Code of June 24, 1939, P.L. 872, as amended by the Act of September 23, 1959, P.L. 945, 18 PS §4528. Defendants have filed a joint motion to suppress the evidence and to quash the information, including the number and term of all four individual cases in the caption.

We do not approve of this practice. It would have been far better to have filed a separate motion in each case, even though they all raised the same questions and were argued together and will be disposed of in this single opinion.

Although five reasons are stated to support the motion, they actually raise only two questions: (1) was there an unreasonable search, and (2) was the prosecution brought under an unconstitutional statute.

In support of defendants' position that the prosecution was founded on an unconstitutional statute which we assume is considered as the basis for the request to quash the information, defendants point to Commonwealth v. Blumenstein, 396 Pa. 417. That case did hold section 528 of the Act of 1939, P.L. 872, to be unconstitutional. This prosecution is under the Act of 1959, P.L. 945, which was passed by the legislature specifical-

ly to cure the defect pointed out in the Blumenstein case. We do not decide at this time the constitutional question. We do point out, however, that the language of the amendment follows the language suggested by the Supreme Court in the Blumenstein case to meet the tests of constitutionality laid down by the United States Supreme Court in its decisions.

It was agreed by counsel that we consider the testimony taken at the preliminary hearing before the magistrate when passing upon the question of the validity of the search warrant. Neither the search warrant nor the complaint supporting it have been made a part of this record. These papers should be made a part of the record when they are attacked.

A part of the allegations of the complaint are set forth in petitioners' brief and since the Commonwealth has not seen fit to question the accuracy of the portion set out, we will treat it as an accurate statement of the contents of the complaint. That portion of the brief is:

"On June 28, 1962 at 6:15 o'clock P. M. DST, Corporal Alfred J. Corkran of the Pennsylvania State Police went to the office in Manchester Township of Oliver Nace, Justice of the Peace with the information that 'a stag show was going to be held at this time and place', which information was received from 'a confidential informer'."

The corporal testified he served the warrant at approximately 9:15 standard time, or 10:15 DST, four hours after the warrant was issued. In response to the question, "Then it was approximately 6:15 Daylight Time you took out the search warrant. What information, Corporal Corkran, did you have that led you at 5:15 Eastern Standard Time to take out this search warrant?" Corporal Corkran testified, "A confidential informer told me that a stag show was going to be held at this time and place." Later when asked, "What facts

did your informant give you to lead you to complain there was going to be a skin show held at a bungalow in Saginaw," the corporal stated: "Another informant told me where the show was going to be held. I had three tickets purchased for the show at $10.00 apiece and on the ticket was the words 'Shhh it's a surprise June 28 Saginaw 8 P. M. until'."

It seems clear beyond question that no crime was being committed when the warrant was issued. Even the complaint is in the future tense. The following testimony of the complaints further confirms this conclusion. "Q. Was there anything going at 5:15 subsequent to the time of your information. A. I don't know, I wasn't there. Q. When you got your information and, or did your informant tell you there was anything going on? A. I didn't ask him. Q. At 5:15 you had no information concerning any type of obscene activities, except that one was going to take place? A. Yes, that one was going to take place."

The question thus presented may be stated thus: does the belief on the part of the affiant that a crime is going to be committed in the future constitute probable cause for the issuing of a search warrant to be executed at a future time when the affiant believes the commission of the offense is then in progress.

In 79 C.J.S. Searches and Seizures, §74, the rule is stated to be: "The facts warranting the conclusion of probable cause must exist at the time of such judicial finding, and it is insufficient that they will, or may, come into existence thereafter." The cases that touch on this problem are those involving situations where there has been an unreasonable delay in the execution of the warrant. It is uniformly the rule in all jurisdictions that the warrant must be executed reasonably promptly after it is issued. Counsel has cited no case involving the exact question raised here, nor have we found any.

A leading case touching on the problem is State v. Guthrie, 90 Me. 448, 38 Atl. 368, where a search warrant was not executed for three days after it was issued. There the court said: "It is suggested that the prosecution often needs to obtain search warrants in advance, in order to have them in readiness to seize the liquors at the moment of deposit before they can be concealed; that such a procedure is very efficacious, and even essential, to circumvent the cunning of liquor sellers; and that the rule here evolved will nullify it. If such a practice obtains it should be nullified.

"No prosecution can be lawfully begun, no criminal process lawfully issued, before the offense is committed. The practice suggested, if it obtains, is a scandalous abuse of legal process, based upon the perjury of the complainant, and subjecting all concerned in it to penalties and dangers."

In State v. Miller, 329 Mo. 855, 46 S.W. 2d 541, the court concluded: "The constitution and the statutes enacted pursuant thereto necessarily contemplate that the facts warranting the conclusion of probable cause must exist at the time of such judicial finding, not that they will or may come into existence thereafter." The court further said: "A search warrant cannot legally be issued upon a showing not that the law has been or is being violated but only that it may or probably will be violated at a time near or remote in the future." These holdings were cited with approval in Mitchell v. United States, 258 Fed. 2d 435 (C.C.A. (D.C.)), where it is held: "A search warrant is based upon a judicial determination of the *present existence* of justifying grounds—i.e. at the time of the issuance of the warrant. 'The purpose is to seize the thing alleged to be at that time in the place to be searched, to prevent its removal or further concealment.' State v. Guthrie, 1897, 90 Me. 448, 38 A. 368, 369. 'Warrants are directed to existing violations of the law and not to violations

which may come into existence in the future.' Simmons v. State Okl. Cr. 1955, 286 P. 2d 296, 298."

In none of our research did we find any conclusion expressed contrary to those cited above. Here admittedly no crime was being committed at the time the complaint was made, and the officer knew there wasn't. It was probably more convenient for the officers to follow the procedure they did, but the constitution may not be set aside for convenience.

Carroll v. United States, 267 U.S. 132, 69 L. Ed. 543, has been referred to as authority for the issuing of a search warrant on reasonable belief that a crime is about to be committed. We do not so consider the case. There the officers stopped and searched a moving automobile in which they found illegal liquor. The question before the court was whether the officers had sufficient knowledge to reasonably lead them to believe that the car was then being used in the commission of an offense to justify the search without a warrant. The court held that in that case the search was justified.

In this case the evidence shows that it would have been possible to have obtained a search warrant after the alleged offense had come into being and to have executed it while the alleged offense was still in progress. Nothing herein is intended to be construed as limiting the right of enforcement officers to make a reasonable search where it is impossible to obtain a search warrant in advance, as for example in the automobile cases.

We accordingly enter this

### Order

And now, to wit, December 10, 1962, it is ordered, adjudged and decreed that the search warrant issued in these cases was invalid and that the motions to suppress the evidence obtained by use of the search warrant be and is hereby sustained.

An exception is granted in each case to the Commonwealth to the action of the court in this regard.